1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10

11  GILBERT M.,[1]                          ) Case No. EDCV 19-2500-JPR
                                            )
12                       Plaintiff,         )
                                            ) **MEMORANDUM DECISION AND ORDER**
13              v.                          ) **AFFIRMING COMMISSIONER**
                                            )
14  ANDREW SAUL, Commissioner               )
    of Social Security,                     )
15                                          )
                         Defendant.         )

16  **I.   PROCEEDINGS**

17       Plaintiff seeks review of the Commissioner's final decision

18  denying his application for Social Security supplemental security

19  income benefits ("SSI").  The matter is before the Court on the

20  parties' Joint Stipulation, filed August 11, 2020, which the

21  Court has taken under submission without oral argument.  For the

22  reasons stated below, the Commissioner's decision is affirmed.

23  **II.  BACKGROUND**

24       Plaintiff was born in 1969.  (Administrative Record ("AR")

25

26       [1] Plaintiff's name is partially redacted in line with
27  Federal Rule of Civil Procedure 5.2(c)(2)(B) and the
    recommendation of the Committee on Court Administration and Case
28  Management of the Judicial Conference of the United States.

1   155.)   He completed 10th grade (AR 33) and worked as a laborer

2   and a pizza deliveryman (AR 34, 176, 184).   On May 6, 2016, he

3   applied for SSI (AR 164), alleging that he had been unable to

4   work since March 1, 2011, because of "severe" leg and arm pain,

5   numbness, blood clots, blurry vision, diabetes, and seizures (AR

6   156).[2]

7        After his application was denied initially and on

8   reconsideration, he requested a hearing before an Administrative

9   Law Judge.   (AR 99-100.)   A hearing was held on November 8, 2018,

10  at which Plaintiff, represented by counsel, testified, as did his

11  wife and a vocational expert.   (AR 31-50.)   In a written decision

12  issued January 4, 2019, the ALJ found him not disabled.   (AR 14-

13  24.)   On November 2, 2019, the Appeals Council denied his request

14  for review.   (AR 1-3.)   This action followed.

15  **III.  STANDARD OF REVIEW**

16       Under 42 U.S.C. § 405(g), a district court may review the

17  Commissioner's decision to deny benefits.   The ALJ's findings and

18  decision should be upheld if they are free of legal error and

19  supported by substantial evidence based on the record as a whole.

20  See Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v.

21  Astrue, 481 F.3d 742, 746 (9th Cir. 2007).   Substantial evidence

22  means such evidence as a reasonable person might accept as

23  adequate to support a conclusion.   Richardson, 402 U.S. at 401;

24  Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).   It

25  is "more than a mere scintilla, but less than a preponderance."

26  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

27       [2] Although Plaintiff alleges that his disability began in
    March 2011, the earliest treatment notes in the record are from
28  2015.   (See AR 239-40.)

2

1 | Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec.

2 | Admin., 466 F.3d 880, 882 (9th Cir. 2006)).  "[W]hatever the

3 | meaning of 'substantial' in other contexts, the threshold for

4 | such evidentiary sufficiency is not high."  Biestek v. Berryhill,

5 | 139 S. Ct. 1148, 1154 (2019).  To determine whether substantial

6 | evidence supports a finding, the court "must review the

7 | administrative record as a whole, weighing both the evidence that

8 | supports and the evidence that detracts from the Commissioner's

9 | conclusion."  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir.

10 | 1998).  "If the evidence can reasonably support either affirming

11 | or reversing," the reviewing court "may not substitute its

12 | judgment" for the Commissioner's.  Id. at 720-21.

13 | **IV.   THE EVALUATION OF DISABILITY**

14 |      People are "disabled" for purposes of receiving Social

15 | Security benefits if they are unable to engage in any substantial

16 | gainful activity owing to a physical or mental impairment that is

17 | expected to result in death or has lasted, or is expected to

18 | last, for a continuous period of at least 12 months.  42 U.S.C.

19 | § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir.

20 | 1992).

21 |      A.   The Five-Step Evaluation Process

22 |      An ALJ follows a five-step sequential evaluation process to

23 | assess whether someone is disabled.  20 C.F.R. § 416.920(a)(4);

24 | Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as

25 | amended Apr. 9, 1996).  In the first step, the Commissioner must

26 | determine whether the claimant is currently engaged in

27 | substantial gainful activity; if so, the claimant is not disabled

28 | and the claim must be denied.  § 416.920(a)(4)(i).

1    If the claimant is not engaged in substantial gainful

2 activity, the second step requires the Commissioner to determine

3 whether the claimant has a "severe" impairment or combination of

4 impairments significantly limiting his ability to do basic work

5 activities; if not, a finding of not disabled is made and the

6 claim must be denied.  § 416.920(a)(4)(ii) & (c).

7    If the claimant has a "severe" impairment or combination of

8 impairments, the third step requires the Commissioner to

9 determine whether the impairment or combination of impairments

10 meets or equals an impairment in the Listing of Impairments

11 ("Listing") set forth at 20 C.F.R., part 404, subpart P, appendix

12 1; if so, disability is conclusively presumed and benefits are

13 awarded.  § 416.920(a)(4)(iii) & (d).

14    Before proceeding to step four, the ALJ must determine the

15 claimant's residual functional capacity ("RFC").[3]  § 416.920(e);

16 see also Laborin v. Berryhill, 867 F.3d 1151, 1153 (9th Cir.

17 2017) (ALJ assesses claimant's RFC between steps three and four).

18 The fourth step requires that the ALJ determine whether the

19 claimant's RFC is sufficient to perform past relevant work.

20 § 416.920(a)(4)(iv).  If it is not or the claimant has no past

21 relevant work, the Commissioner then bears the burden of

22 establishing that he is not disabled because he can perform other

23 substantial gainful work in the national economy, the fifth and

24 final step of the analysis.  §§ 416.920(a)(4)(v), 416.960(c)(2);

25 Drouin, 966 F.2d at 1257.

26 _____

27    [3] RFC is what a claimant can do despite existing exertional
and nonexertional limitations.  § 416.945(a)(1); see Cooper v.
28 Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

1        B.    The ALJ's Application of the Five-Step Process

2        At step one, the ALJ found that Plaintiff had not engaged in

3 substantial gainful activity since May 23, 2016, the application

4 date.[4]  (AR 16.)  At step two, he determined that Plaintiff had

5 severe impairments of "late effects of cerebrovascular accident

6 and status post non-ST-elevation myocardial infarction."[5]  (Id.)

7 At step three, he found that Plaintiff's impairments did not meet

8 or equal any of the impairments in the Listing.  (AR 18.)  At

9 step four, he determined that he had the RFC to perform light

10 work except

11        he can stand or walk for a total of two hours out of an

12        eight-hour  workday.    The  claimant  can  occasionally

13        balance, stoop, kneel, crouch, and crawl; occasionally

14        climb ramps and stairs; and never climb ladders, ropes,

15        or scaffolds.  He can frequently handle and finger.  The

16        claimant must avoid concentrated exposure to hazards.

17        Further, he can perform simple routine tasks.

18 (AR 19.)

19        The ALJ concluded that Plaintiff had no past relevant work

20 but could perform three jobs available in significant numbers in

21 the national economy.  (AR 23-24.)  Accordingly, he found him not

22 disabled.  (AR 24.)

23

24

_____

25        [4] The application is actually dated May 6.  (See AR 164.)

26        [5] A "non-ST segment elevation" heart attack, or NSTEMI, "is

27 typically less damaging" to the heart than the more common STEMI.
NSTEMI: What You Need to Know, Healthline, http://

28 www.healthline.com/health/nstemi (last visited Mar. 14, 2021).

**V.    DISCUSSION**

Plaintiff alleges that the ALJ erred in assessing his subjective symptom statements.  (See J. Stip. at 10-13, 17-19.) For the reasons discussed below, no error occurred.

A.    Relevant Background

Plaintiff had a history of stroke, including one in 2011, when his disability allegedly began.  (AR 267.)  He also occasionally suffered seizures.[6]  (Id.)  He acknowledged that they were well controlled with medication, however (AR 36); at the November 2018 hearing, he said he had last had one "around eight months ago" (id.), and in November 2016 he told a doctor that he had not had one for "over a year" (AR 270).  He would get gout in his feet if he ate "a lot" of "spicy foods."  (AR 42.)

Before his 2011 stroke, Plaintiff had not worked for some time.  The most he ever earned in a year was about $4300, in 2000, and he acknowledged never earning more than $1000 in any given month.  (AR 34, 167.)  He had no recorded income since 2004 (AR 167; see also AR 165, 170), although he reported working in July 2005 as a pizza deliveryman and from January 2004 until April 2009 as a laborer for a temp agency (AR 176, 184).  In a Disability Report, he stated that he last worked on July 1, 2006, when he got "laid off."  (AR 175.)

B.    Plaintiff's Subjective Symptom Statements and Testimony

There is no function report in the record, but at the

---

[6] Although Plaintiff apparently told the consulting examiner that he "first had a seizure in 2011" (AR 267), other records have him claiming that his first seizure occurred in 1999 (AR 231).

1 hearing Plaintiff testified that he couldn't work because he

2 couldn't "move [his] left side" (AR 35), presumably as a result

3 of the 2011 stroke.  He claimed to be unable to stand for more

4 than 10 minutes and said he "bump[ed] into things" (id.) and

5 "sometimes" lost his balance (AR 37).  He stated that he could

6 walk "a block" but had "never tried" walking more than that.[7]

7 (AR 35.)  He claimed to be unable to hold things with his

8 nondominant left hand (id.) but acknowledged that he could lift

9 and carry "maybe like 25 pounds" (AR 36).  He "on and off" used a

10 cane.  (AR 38.)

11     His wife helped him with his personal hygiene and

12 administered his medicines to him.  (AR 36-37, 41.)  He was

13 "sometimes" confused or couldn't remember things.  (AR 37.)  He

14 spent his days watching television and sometimes laid down and

15 elevated his legs.  (AR 38-40.)  He took the trash out (AR 42)

16 and "pick[ed] [up] after" himself (AR 43), and he occasionally

17 went to the grocery store with his wife, but she took the items

18 off the shelves, put them in the cart, and carried the bags

19 (id.).

20     C.   The ALJ's Decision

21     The ALJ found Plaintiff's statements concerning the

22

23

24     [7] In April 2016, Plaintiff told a doctor at the prison where
he was then incarcerated that he was walking "2-3 laps" every
day, although it's not clear how long a "lap" was, and was
25 "do[ing] other exercises for about 1 hour a day."  (AR 231.)  In
August 2015, a prison doctor observed that he "walk[ed] very fast
26 without any problems" and "without any assistance" and wasn't
using a cane.  (AR 237.)  In July 2015, he was doing "100
27 pushups" a day in prison along with "a few other exercises."  (AR
239.)
28

1  "intensity, persistence, and limiting effects of his symptoms" to

2  be "less than fully persuasive" because of his "work history" and

3  because his symptom allegations were "greater than expected in

4  light of the objective evidence of record."   (AR 20; see also AR

5  23.)

6      Concerning Plaintiff's work history, the ALJ noted that even

7  though he claimed his disability began when he had a stroke in

8  2011, the record "revealed . . . no work activity since 2004."

9  (AR 20.)   Thus, his "continuing unemployment" may not have been

10 "due to medical impairments."   (Id.)

11     As to the objective medical evidence, the ALJ summarized it

12 and observed several ways it did not support Plaintiff's symptom

13 allegations.   For example, the ALJ noted the mostly normal

14 examination and testing findings in the record (AR 20-21) and

15 observed that Plaintiff had on one occasion left the hospital

16 against medical advice (AR 21; see AR 379; see also AR 294

17 (Plaintiff declining treatment despite claiming severe pain)).

18 He also noted that Plaintiff had been working out with a

19 "trainer" and "doing well" (AR 21), although it was actually a

20 "max trainer" (AR 333, 336), a type of exercise equipment

21 providing a cardio workout, see Bowflex Max Trainer, Bowflex,

22 http://www.bowflex.com/max-trainer (last visited Mar. 14, 2021).

23     D.   Applicable Law

24     An ALJ's assessment of a claimant's allegations concerning

25 the severity of his symptoms is entitled to "great weight."

26 Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (as amended)

27 (citation omitted); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir.

28 1985) (as amended Feb. 24, 1986).   "[T]he ALJ is not 'required to

1  believe every allegation of disabling pain, or else disability

2  benefits would be available for the asking, a result plainly

3  contrary to 42 U.S.C. § 423(d)(5)(A).'" Molina v. Astrue, 674

4  F.3d 1104, 1112 (9th Cir. 2012) (quoting Fair v. Bowen, 885 F.2d

5  597, 603 (9th Cir. 1989)).

6       In evaluating a claimant's subjective symptom testimony, the

7  ALJ engages in a two-step analysis. See Lingenfelter, 504 F.3d

8  at 1035-36; see also SSR 16-3p, 2016 WL 1119029, at *3 (Mar. 16,

9  2016). "First, the ALJ must determine whether the claimant has

10 presented objective medical evidence of an underlying impairment

11 '[that] could reasonably be expected to produce the pain or other

12 symptoms alleged.'" Lingenfelter, 504 F.3d at 1036 (citation

13 omitted). If such objective medical evidence exists, the ALJ may

14 not reject a claimant's testimony "simply because there is no

15 showing that the impairment can reasonably produce the degree of

16 symptom alleged." Id. (citation omitted; emphasis in original).

17      If the claimant meets the first test, the ALJ may discount

18 the claimant's subjective symptom testimony only if she makes

19 specific findings that support the conclusion. See Berry v.

20 Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). Absent a finding or

21 affirmative evidence of malingering, the ALJ must provide a

22 "clear and convincing" reason for rejecting the claimant's

23 testimony. Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir.

24 2015) (as amended) (citing Lingenfelter, 504 F.3d at 1036);

25 Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th

26 Cir. 2014). The ALJ may consider, among other factors, the

27 claimant's (1) reputation for truthfulness, prior inconsistent

28 statements, and other testimony that appears less than candid;

(2) unexplained or inadequately explained failure to seek

treatment or to follow a prescribed course of treatment; (3)

daily activities; (4) work record; and (5) physicians' and third

parties' statements.  Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d

996, 1006 (9th Cir. 2015) (as amended); Thomas v. Barnhart, 278

F.3d 948, 958-59 (9th Cir. 2002).  If the ALJ's evaluation of a

plaintiff's alleged symptoms is supported by substantial evidence

in the record, the reviewing court "may not engage in second-

guessing."  Thomas, 278 F.3d at 959.

E.   Analysis

To start, the ALJ properly concluded that Plaintiff's

subjective symptom statements were inconsistent with the

objective medical evidence in the record, a finding Plaintiff has

not challenged on appeal other than to point out that that can't

serve as the only reason to discount a plaintiff's statements and

testimony.  (J. Stip. at 12); Morgan v. Comm'r of Soc. Sec.

Admin., 169 F.3d 595, 600 (9th Cir. 1999) (finding "conflict"

with "objective medical evidence in the record" to be "specific

and substantial reason" undermining plaintiff's allegations).

Indeed, the consulting examiner opined that Plaintiff was able to

perform work consistent with the RFC (see AR 270), a finding

Plaintiff has not challenged on appeal and that is not

contradicted by any other medical opinion in the record.

Plaintiff challenges only the ALJ's reliance on his poor

work history to discount his subjective symptom statements.  (J.

Stip. at 10.)  He claims that the ALJ only "superficially

investigated" that history because Plaintiff "could have been

paid 'under the table'" at jobs that did not show up in his work

history.  (Id. at 10-11.)  He further notes that he "has a 10th grade education, does not possess any certifications, and has a criminal history," which might have made it difficult for him to get a job.  (Id. at 11.)

A plaintiff's work history is properly considered in assessing his subjective symptom statements.  See § 416.929(c)(3); Thomas, 278 F.3d at 959; Taylor v. Colvin, 618 F. App'x 342, 343 (9th Cir. 2015).

Plaintiff's speculative arguments concerning his work history do not warrant remand.  Whether he was ever paid under the table for work such that it didn't show up on his official earnings statement doesn't undermine the ALJ's conclusion that his work history was poor because he acknowledged that he had never made more than $1000 in any given month (AR 34) and that he last looked for work in 2010 (id.) — not in the early months of 2011, before his stroke.[8]  And the only indication in the record of his being incarcerated concerns a period from late 2013 to early 2016, after the alleged disability date.  (See AR 202.)

Moreover, Plaintiff was represented by counsel throughout the administrative proceedings.  (See AR 4-5, 31, 152.)  If

_____

[8] Plaintiff contends that "minimal earnings do not necessarily equate to lack of worth ethic," pointing out that under the minimum wage in effect when he was last working, $6.25 an hour, he would have earned only $250 a week "assuming a full 40-hour week."  (J. Stip. at 19.)  But Plaintiff acknowledged earning $7.75 an hour at least as of 2004, not the $6.25 minimum wage he now cites.  (See AR 176, 185-86.)  That would come out to $1240 a month for a full-time job in even the shortest month of the year, February, and yet Plaintiff acknowledged never earning more than $1000 in any given month.  Thus, his speculation does not undermine the ALJ's reasoning.

1 | evidence existed that his work history was greater than the ALJ
2 | found based on the record, he could have presented that evidence
3 | to the Appeals Council.  He did not.  He claims that "[a]s much
4 | as [his] explanation" for his poor work history "is speculation,
5 | so too is the ALJ's negative inference."  (J. Stip. at 18.)  To
6 | the contrary, the ALJ relied on the record evidence showing that
7 | he had no recorded earnings after 2004, never earned more than
8 | $1000 in a month, and last looked for work in 2010, well before
9 | his stroke, to find that his statements concerning the severity
10 | of his impairments should be discounted.  See DeLeon v. Saul, 812
11 | F. App'x 529, 530 (9th Cir. 2020) (upholding ALJ's reliance on
12 | plaintiff's "poor work history, dating back to before she had
13 | children," to discount her subjective symptom statements);
14 | McClaren v. Saul, 812 F. App'x 500, 501 (9th Cir. 2020)
15 | (declining to "second-guess" ALJ's reliance on plaintiff's having
16 | "worked only sporadically even before her disability onset date"
17 | to discount subjective symptom statements).

18 | **VI.  CONCLUSION**

19 | Consistent with the foregoing and under sentence four of 42
20 | U.S.C. § 405(g),[9] IT IS ORDERED that judgment be entered
21 | AFFIRMING the Commissioner's decision, DENYING Plaintiff's
22 | request for reversal, and DISMISSING this action with prejudice.
23 | DATED: March 16, 2021 _____
JEAN ROSENBLUTH
24 | U.S. Magistrate Judge

25 |

26 | [9] That sentence provides: "The [district] court shall have
power to enter, upon the pleadings and transcript of the record,
27 | a judgment affirming, modifying, or reversing the decision of the
Commissioner of Social Security, with or without remanding the
28 | cause for a rehearing."